Your Honors, this case presents the court a question certified by the District Court whether the rule announced by the Supreme Court in Miller v. Alabama applies retroactively to cases on collateral review. The answer is yes. First, as a growing majority of jurisdictions around the country are holding, Miller applies retroactively because it is a substantive rule. The Supreme Court has set a rule as substantive if it prohibits a certain category of punishment for a class of defendants because of their status. Miller bans the punishment of mandatory life without parole for juveniles as a class because of their status and holds that these mandatory sentences are cruel and unusual punishment. Miller also requires sentencers in Virginia to consider new factors before juveniles are sentenced to life without parole, including their capacity for rehabilitation in light of the juveniles that require their distinctive treatment under the criminal law. This is exactly the kind of ruling that the Supreme Court stated in the Summerlin case is substantive and not procedural. Second, the Supreme Court has already applied the Miller rule to a case on collateral review, Jackson v. Hobbs, which it decided together with Miller and has expressly stated that when it applies a new rule to one case on collateral review, quote, even-handed justice requires that it be applied retroactively to all similarly situated cases on collateral review. Two circuits out there, the 5th and the 11th at least, everybody agrees that this is a new rule. Correct. That Miller announced a new rule and so then the question on retroactivity is whether it bars a particular punishment altogether or whether it's procedural. And so you've got the 5th and 11th circuits saying this is procedural. And you just disagree with those circuits? Well, I think I'd say two things first about the 5th and the 11th circuits, Your Honor. First, the 5th circuit decision is an unpublished decision. It's not Yeah, I believe it did in that. And I guess what I was going to say is the 11th circuit, also, that was the success of petitions. They were applying a different rule under that question. But going to those circuits, and those were the first, kind of the first cases out of the box on this. And I think, well, I think they've certainly been repudiated by the weight of recent authority afterwards where a I think the major, and you are correct, I think we do certainly disagree with some of the reasoning in those cases. I mean, there's already a circuit conflict out there. Perhaps, I guess, I don't know. That's one of the reasons why I mentioned the 5th circuit's unpublished. I don't know if you necessarily create a conflict. No, but that was a petition. And the success of petition has a different standard for determining retroactivity. It rested very clearly on the idea that this was a procedural ruling. I think that's correct, Your Honor. I think they did go on to talk about that issue. And I think where we would respectfully, I think, disagree with the 11th circuit is on two grounds. First of all, we think the 11th circuit did not appreciate the distinction here that was a Somerlin case between the question of what factors need to be considered and who considers them. I think what Morgan did is they looked at, there's a sentence, I think, in the Miller case where they say we're not categorically barring this punishment, but we're mandating a certain process. And I think the misunderstanding there is to think that mandating a process means it's a procedural ruling. The process that's mandated here requires that certain factors be considered for juveniles that weren't considered before under the mandatory sentencing scheme. But it didn't, the key word, isn't the key word categorical that the court did not categorically bar a sentence of life without parole for juveniles? It would be hard to say that there was a categorical bar here. And we have a rape and murder of Miss Hall. And then we have two rapes from Southampton County. And life without parole wouldn't be categorically barred for someone with this quite brutal and terrible criminal history. Well, but that history would have to be taken into account and taken into account in the context of a juvenile's capacity for rehabilitation. And that's, those are the factors, I'm sorry, I was going to say those are the factors, and see these are new factors. But the whole point is that it can be taken into account that they didn't categorically bar a sentence of life without parole and say you can't reach it by way of a mandatory route. That's correct. You had to do that, you have to do it individually. But the point remains, you don't, what was barred was a mandatory thing. It wasn't, but it was the sentence itself of life without parole was not barred. And so it's all a question of how you reach the sentence of life without parole, isn't it? Well, I think it's correct that it's a question of how you reach it, but I think what's crucial here for the distinction between Miller and procedural cases is that you have to reach it by consideration of factors, including the juvenile's status, the juvenile's capacity for rehabilitation, and all of the other factors that are listed in the Miller case. Those are now substantive factors that have to be considered, and those are substantive factors that are added by the Supreme Court in the Miller decision. You're talking about procedures here. You reach it through individual procedures, through individualized procedures. But it's individualized procedures that require the consideration of factors now that did not have to be required when the sentence... The thing you're talking about is procedural. You go at it through a certain procedure, and that is through considering individual factors. Well, but I think that's exactly the distinction that the Summerlin case makes. And if I can just read you the language that we're relying on from that, the Commonwealth didn't deal with this language. It said, this court's holding that because Arizona has made a certain fact essential to the death penalty, that fact must be found by a jury. It's not the same as this court's making a certain fact essential to the death penalty. The former was a procedural holding. The latter would be substantive. And so in this particular case, it's not Virginia that made these factors relevant. It is the Supreme Court in Miller that made these factors relevant. And so it's the situation that in Summerlin they said was substantive, because here the Supreme Court imposes the factors, not Arizona. In Summerlin, the reason that was procedural was because Arizona established the aggregating factors, and the only question was whether a judge or a jury decided them. Here it's the Supreme Court in Miller that established the factors. And so under Summerlin, that's exactly the kind of situation that is substantive and not procedural. One of the options, one of the difficulties I have is that the language of the court in Miller certainly seems to support the idea that the rule, that they regard the rule as procedural. They say we're not foreclosing the sentence's ability. We're just requiring it to take a procedural step or proceed as though they're not allowed to proceed as though they're not children. The court's language is fairly consistent in suggesting that they view the distinction as procedural. And it also, the court also declined to consider, the court did not consider the alternative argument that a categorical bar on life without parole did not consider imposing a categorical bar. We agree that a categorical bar would be substantive. Why isn't that, why is the fact that the Supreme Court decided not to do so indicative of the fact that it recognized the distinction between putting life without parole completely off the table as opposed to a requirement that it be factored into consideration? Yeah, I mean, I think all of what you say is true, Judge Duncan. I think that the one problem, though, is they did say they were mandating a process. They did not say that that meant it was a procedural ruling. A process obviously can have substantive components, particularly when those substantive components are being required. As to the mandating procedure, you know, yes, there will have to be a procedure to consider those factors, but that doesn't mean that the ruling is merely procedural. On the categorical bar language, you know, the context of that in Justice Kagan's opinion, I don't think she was, you know, really intending that that one sentence decide the retroactivity question. That was in the context of saying, well, we're not overruling all of these states that now have life without parole. But it recognized that as an option, and that would have been a categorical bar. It was recognizing the fact that what it was doing was distinguishable from an option that would be a categorical bar. It was, but it still categorically bars the mandatory life without parole sentence. And, you know, one of the ways I guess maybe to think about this is that, you know, at the time, if you have life without parole, at the time that you establish mandatory, make that sentence mandatory, I mean, that's a substantive decision that has to be made by the legislature. This court could not as a matter of procedure say that a sentence has to be mandatory. The problem is when you reverse that decision. So then when you reverse it. Judge Duncan is suggesting, I think, that Judge Kagan, Justice Kagan didn't just blunder into that language and that there was a sharp distinction drawn in the court's opinion between a categorical bar of life without parole and attacking the particular mandatory route of reaching the bar. And, you know, I guess the bottom line is, why shouldn't we take the Supreme Court at its word? Well, because I think the Supreme Court really has done much less than come out and specifically say this is a procedural as opposed to a substantive ruling. I think mandate a process because process and procedure are similar. That's a conclusion that courts, some courts have jumped to. Many, many courts have not jumped to that conclusion because I think they have understood that that process does require the consideration of new factors. And those courts have relied specifically on the language from Summerlin that I just cited that distinguishes the question of who imposes the factors here the Supreme Court, that substantive, from a situation where the state doesn't. But when you take a step back here, the whole concern about retroactivity and implying new rules, retroactivity just absolutely crumbles. I mean, it just is an attack upon our federal structure and upon state courts because the state courts proceeded in this particular case under the law as it was at the time. And there was nothing unlawful about this decision at the time it was imposed. And when you take new rules, this is concededly a new rule, and we apply it retroactively, what we do is we simply punish and put punitive sanctions on states for obeying and following the law in effect at the time and concededly correct at the time. Now, nobody's saying that this sentence was incorrect at the time it was imposed. And why shouldn't a state be able to do that without getting retroactively slammed by the retroactive application of a new rule? Because the whole purpose of TIG v. Lane was to avoid just that sort of damage to our federal system and to states that had lawfully followed the rules of law in effect at the time that they acted. That's where we get to. We're beginning to unravel TIG is what's happening. That's what's happening. Well, yeah, I mean, I understand the argument, and that's the argument that Justice O'Connor also stated in TIG, but TIG did itself allow for exceptions for substantive rules. And as Summerlin shows, this is a substantive rule. As to the question of federalism, I guess one thing I would point out, and I think we mentioned this in our 28J letter, to the extent that the states feel that they're being oppressed by retroactive application, a clear majority of the state Supreme Courts that have considered this now, I think it's now eight to four, including I think six of the last seven, have determined that it's retroactively, has determined that Miller is retroactive. Now, the state comes and says, well, the states are free to have broader retroactivity rules than TIG permits. But all of these states, in applying TIG, and all of them, at least in our reading of them, have applied TIG pretty faithfully. Don't you think there's a difference when the state does something and the federal court does something? And the federal court imposes it on the state. I mean, it's true that when the state does it, it doesn't impose the federalism concerns that you're raising. But I think it's also true that these states have not, the states are not behaving as though they consider this to be a real imposition on them, at least the ones who consider it. And they have applied TIG. Four of them did. Yeah, four of them have, and I think eight of them have not, yeah. So I guess that's, but I guess my point is we're pointing to those also because those are states that have viewed TIG and have applied TIG, I think, very consistently with the Supreme Court's direction in Summerlin, that when new factors are added by the Supreme Court, that's substantive. The only thing that's procedural is whether, you know, determinations as to, for example, who does or doesn't make the determination on those factors. And so in this particular case, we fall right in with that because here the Supreme Court added the factors, and the question is not who decides them, but the fact that the factors have been added. And in Summerlin, the question was Arizona added the factors, and it was— All right, thank you, Mr. Longstreet. You've got some time remaining. Let's hear from Ms. Armstrong. Thank you, Your Honor. May it please the Court, Alice Armstrong on behalf of the warden. Your Honor, Shermaine Johnson asks this court to overturn his sentence for the capital murder of Hope Hall. The only thing that he has challenged in the federal court is the sentence itself. He has not challenged the validity of the underlying conviction. He has not challenged the other convictions to which he is subject. He has not challenged the life sentence in the predicate rape offense. Under those circumstances, the question that he is posing to this court is purely academic. The harm that he is complaining about is not fairly traceable to the sentence that was imposed on the capital murder. He is parole-ineligible because of his status as a recidivist under Virginia law. Mr. Johnson— This was the first of your two alternative arguments, correct? Correct. So even though this wasn't murder, and even though this sentence was imposed as a result of the murder and rape convictions, wouldn't it still be a mandatory sentence of life without parole? And Miller did say that mandatory sentences of life without parole for juveniles were unconstitutional. In other words, I'm just wondering whether your second argument wasn't a much better one than your first. The Virginia law argument, Your Honor? That it's not mandatory as a matter of— The one, the redressability. Correct. I don't mean to take the argument away from you. I just wondered whether— I think they're inexplicable. I mean, they're intertwined, Your Honor. They both go to the question of standing. And Your Honor is exactly correct. There is no redressability in this case. There can't be because even if this court found that Miller is retroactive, and I'll address that because I don't agree that it is, but even if this court found that Miller is to be applied retroactively, and even if Virginia resentences Sherman Johnson, and even if the sentence that Virginia sentences him to on remand were one day or life with everything suspended but one day, he is not eligible for parole as a matter of Virginia law, not because of the sentence that was imposed on him. And the sentence that was— But then doesn't it become a mandatory sentence? And then doesn't it become a mandatory sentence if he's not eligible? Does it then become a mandatory sentence and run afoul of Miller? I don't— You see what I'm saying? I believe I understand the court's question, and my response is the sentence itself is not mandatory, and it does not become mandatory, and here's why, Your Honor. It doesn't become mandatory if you have the requisite predicate convictions. But he's already subject to the mandatory life without parole without reference to this sentence is my response. The three predicate rapes standing alone, which are not before this court and cannot be challenged at this point, and there was some discussion below that there's a potential Graham claim, and I would submit to the court that there is no potential Graham claim because the time for asserting a Graham claim has come and gone. It would not only be untimely, it would be barred by the successive writ rule at this stage of Mr. Johnson's proceedings. So the point is because those three predicate rape convictions and sentences are unassailable at this stage of the proceedings, nothing that happens with reference to the capital murder sentence would change Mr. Johnson's status with respect to parole eligibility. I don't—I'm not sure I agree with you that the issue is moot, and the Supreme Court has found that challenges are not mooted by the fact that a defendant would be subject to sentences based on other offenses if he or she were successful in challenging one on a certain basis. And I don't—I'm not sure I see that as your stronger argument anyway. I understand, Your Honor, but I do think that there is a live Article III issue here that I think it's my obligation to alert the court to and to raise with the court because the point being, and I understand Your Honor's point, the point is that Mr. Johnson will never be eligible for parole. He can't be as a matter of Virginia substantive law. Not—and I'm not sure that that makes it moot, but it makes it not redressable. And I would—I analogize, as I did on brief, to the collateral sentencing doctrine. It just can't ever make a difference for Mr. Johnson. So you're making a standing argument then? That's correct. Under what is it, Allen v. McCrary? I'm sorry? A standing argument under Allen v. McCrary, the element of redressability? Redressability, and I don't think that it is fairly traceable to—but certainly with respect to redressability, it cannot be redressed. The thing that he is complaining about, his lack of parole eligibility, cannot be redressed by undoing this sentence. And so that's the principle submission, Your Honor. Turning to the question of retroactivity, the first step in the inquiry is, did the court hold that it was retroactive? Clearly it did not. No, the first step in the inquiry is whether or not Miller creates a new rule. It's conceded. Everyone agrees that it does create a new rule. That's correct, Your Honor. I apologize. Since we had all conceded it, I sort of take that as a given. Yes. The first step is, does it create a new rule? I think everyone agrees that it does. I think all the other courts have—there's uniformity as to that question. It does create—it announced a new rule. In doing so, did it say that it was making the new rule retroactive? It did not. There is no such holding in Miller. One thing, one question I have on this whole area of retroactivity, it's the Supreme Court's decision. Why shouldn't we wait for the Supreme Court to make its decisions retroactive? Why should we be running out ahead of the Supreme Court and telling the Supreme Court which of its decisions are retroactive and which are not? I mean, I'm talking about a proper respect for the Supreme Court on the part of an intermediate appellate court. And just running out and saying, well, your decision is retroactive even though you haven't said so. I mean, I wonder whether we haven't jumped the gun. And I think Tyler v. Cain says exactly that. I think Tyler v. Cain says, nobody else gets to tell us if our decision was retroactive. It's for us to say whether the decision is retroactive. And the way we say that is by holding that it's retroactive. We don't do it by implication. When we mean for something to be retroactive, we're going to say it out loud and we're going to say it clearly. And it certainly, the Supreme Court certainly knew how to do that because it gives examples of such in its own language. It says, our decision does not categorically bar a penalty for a class of offenders or type of crime as, for example, we did in Roper or Graham. Instead, it only mandates the sentence or follow a certain process. So it sets up Miller in contradistinction to Roper and Graham. Exactly. I think when we look to just the plain express language, the simple English on the page, it's very clear that they intended for this to be a procedural rule. And they expressly, as Your Honor notes, expressly distinguish the categorical bar rules in enunciating what this rule does. And what this rule does is create a procedure, a process. And to use the language in Summerlin, a method or a manner for arriving at a sentence that is still permissible as a matter. Unmandatory individualized manner is what it says. Yes. Exactly so. But the manner, that's a process that the states must do, must follow. And I know that there's debate or maybe even dissension, however we want to describe it, among the state courts. And I did not submit a 28-J letter, Your Honors, because I don't think it illuminates the Teague question. The Teague analysis is specifically limited to federal habeas corpus review of state criminal convictions. So although it's intellectually interesting to see what all the state courts are doing, I think Danforth makes very clear the states can get it wrong. They're free to get it wrong. They can call it Teague. They can say they're applying Teague. But it does not matter if they apply Teague incorrectly. So I don't think it illuminates the discussion to say eight did this and four did that or anything else because 50 can do it wrongly. And it doesn't really address the Teague inquiry because the Teague inquiry looks only to federal habeas corpus review of state court convictions. And, Your Honor, I think the answer to the question really lies in Penry. Henry says that it's a substantive rule if the sentence cannot be imposed, quote, regardless of the procedures followed. So in Atkins, there is not a procedure that Virginia can put in place that would make it constitutionally permissible for us to execute an intellectually disabled individual. In Roper, they said there was not a procedure that Virginia could put in place that would make it constitutionally permissible for Virginia to execute a juvenile offender. In Graham, the court said there is not a procedure that Virginia can put in place that would make it constitutionally permissible to sentence a non-homicide juvenile offender to life without parole, without any possibility of parole. But in Miller, they expressed, said there's a procedure that Virginia can follow that would make this sentence permissible. That's a procedural rule. That's not a substantive rule. And I understand that there can be substantive overtones or threads going through these procedural rules, but that doesn't make them substantive. It's still a procedural rule. And I think some of the other Teague non-retroactivity cases illuminate the point. So, for example, in Beard v. Banks, the court addressed whether the rule in Mills v. Maryland regarding the mitigating evidence, the jury, the way the jury was to treat mitigating evidence, that addresses factors that the sentencing body must consider. I think it's very analogous to what we have here, but that's a procedural rule that was not subject to retroactive application. Similarly, the court's decision in Simmons v. South Carolina, in which they held that the jury must be informed when they're making a capital sentencing decision. The jury must be informed of the defendant's ineligibility for parole. That is a factor. That is information that the jury must have in considering a sentence that makes the sentencing proceeding constitutional. It's procedural. It is not retroactive. It was not retroactively applicable. And that's O'Dell v. Netherlands. The Supreme Court has said that watershed rules of procedure may nonetheless be retroactive, but they've never had one that they've held retroactive, I guess. That's correct. Just tell us very briefly why you don't think this is a watershed rule. I think the shortest answer is because it does not apply across the board. I mean, Gideon v. Wainwright, which is the only example that they've – actually, they haven't even said that would be watershed. They just said that most – that might be. It's the closest thing we can think of that could potentially be a watershed rule. But that reaches across the board. A watershed rule was something that impugned the basic accuracy or integrity of judicial findings and decisions. It impugns the accuracy of the fact-finding process. So I'm not sure that there could ever be a rule that addresses a sentencing procedure that could be watershed. I don't know, and I don't want to overstep my bounds. But they haven't found a watershed rule. They certainly have not identified anything other than Gideon v. Wainwright, which goes to the bedrock functioning of how our criminal justice system works. And to the accuracy of the truth-finding process, because a pro se defendant may not be able to marshal all that's required to fend off the government's case, this is not that. This doesn't fall into that category at all. If I may briefly just address the suggestion that the holding in the companion case of Cuntrell Jackson means that they've made this retroactive. Again, they did not so hold. In this court's precedence, and I would cite Nather, I think that's the correct pronunciation. This court has said we're not going to read between the lines. If they say it, it's retroactive. If they don't say it, it's not retroactive. But we're not jumping the gun to say that they meant to say something else that they just didn't tell us. Cuntrell Jackson was not a federal habeas corpus proceeding. Cuntrell Jackson was on certiorari review from a state collateral proceeding. And as this court observed in Nather, there is absolutely no discussion in Miller of Teague. No one raised it. It's a prudential doctrine, so it can be waived. But beyond that, it really doesn't have application under the procedural posture of Jackson because, again, Teague addresses federal habeas corpus. So when the court says collateral proceedings, what they actually mean is something a little narrower than that. And I think Danforth v. Minnesota makes that very clear. And I hate to read to the court. I always hesitate. But if I could just do a tiny bit, which is all other new rules of criminal procedure. So they've addressed what an old rule requires. New rules of criminal procedure must be applied in future trials and in cases pending on direct review, but may not provide a basis for a federal collateral attack on a state court conviction. This is the substance of the Teague rule. So not only can it be waived by Arkansas failing to raise it, but it wasn't even a live issue because it wasn't a federal collateral attack on that conviction or sentence. So there was no occasion for the court to address it. But beyond that, I think Kane says there have to be two or more holdings in succession if we're going to read in a retroactivity requirement. So I don't think that the fact that Jackson was granted relief illuminates the Teague inquiry at all. I do think the plain language of the court's opinion, which says expressly we're not categorically barring it. And obviously, they understood because they cited the other cases. Obviously, they did understand they could announce that categorical bar and expressly distinguish the holding in Miller from the holdings in those categorical bar cases. And I think Penry makes very clear that if there is a process that can be followed that would make the sentence constitutionally permissible, that is a procedural and not a substantive rule. For all those reasons, Your Honors, we would respectfully submit that Miller simply does not apply retroactively to cases that were already completed on direct review when it was handed down in 2012. Unless the court has other questions, we would ask the court to affirm. Thank you. Thank you, Your Honors. Mr. Longstreth. Thank you, Your Honor. First, there was some discussion of the various justiciability arguments. And I think as Judge Wilkinson pointed out, it's not clear if it's a standing argument or a mootness argument or a redressability argument. I think we would just refer you back to our discussion in the brief on that issue. We think it's very clear that this is redressable. The court can award the hearing that Mr. Jackson is asking for. There are consequences that could occur if he is sentenced to something other than life without parole. Geriatric release is one of those. Given this particular record, I always like to just wonder what practically is going to happen. I understand. Given this record, this isn't a single crime. I mean, when you think about Eighth Amendment concerns and you think about injustice, you're thinking about a juvenile who commits a single act, maybe, and you don't want to penalize that person indefinitely. But if you just look at the litigants here, I realize there's a larger question involved. But what do you hope to get out of this when you're not talking about somebody who had a particularly horrendous moment, but someone who commits this series of perfectly hideous acts? I mean, you must have to ask yourself as lawyers, what are you going to do any good for your client at the end of the road? And I know there's a broader question as to whether it's procedural or substantive and all these doctrinal questions that we can productively discuss. But still, this is not a particularly sympathetic case. Well, I guess, Your Honor, two questions. I mean, we've met with Mr. Jackson, and we believe that we probably could do him some good if we were able to get an individual hearing for him. Yes, there was a series of acts, but it was a series of acts over a relatively small period of time by a juvenile who was suffering from various things that were laid out at the time. So I do believe that in the context of having to consider his individual circumstances, and particularly in light of the Miller Rule that says that life without parole sentences under such a system would become uncommon. And I think that kind of goes to the watershed point, too. You have a system where 100 percent of the people get life without parole, and now you go to a situation where that's going to be uncommon. And I think that suggests that the Supreme Court did have some concern about whether the right results were being reached in these cases, whether – You mentioned consider the individual circumstances. Yeah. When you consider the individual circumstances, it leads you right back into this perfectly horrible criminal history. Well, I mean, we would hope the court didn't prejudge what would happen on a resentencing. We do think in light of Mr. Jackson's circumstances, yes, there are multiple offenses, but over a relatively limited time that that case could be made, and I think Mr. Jackson believes it as well. In any event, that's not the kind of prediction that would render the case moot. With respect to and with response to the federalism issue, one thing I would point out here is that this is a case that's based on the Eighth Amendment. This is a case that finds a mandatory life without parole sentence as cruel and unusual punishment under the Eighth Amendment, and that I don't think Virginia cited a case in – Federalism concerns don't just jump out the window because a constitutional provision is involved. No, I understand, but I think this particular constitutional provision, this is not a case that was brought under the Due Process Clause. For example, some of the cases that the Commonwealth's attorney cited when she was up here, the Beard case, for example, that was a question of whether the jury consideration had to be unanimous or not unanimous. Those were cases that were decided, and some of the other cases, for example, that the Fifth Circuit relied on, those were cases that relied on due process concerns. Here you're talking about the substantive guarantee. I've read a great many Eighth Amendment cases, and a lot of them have very vigorous debates about federalism. It's not as if it's just shunted to the side. No, I'm not saying – I'm sorry. I didn't mean to suggest there weren't federalism concerns. I meant to say that because the Eighth Amendment is a substantive guarantee against cruel and unusual punishment, I think that's one of the cases. I don't know that Virginia has cited a single case, and we're not aware of any, where there's been a decision declaring a sentence to be cruel and unusual punishment, and yet that was found to be merely a procedural ruling. And I think we really do have to look at the nature of what we're talking here as an Eighth Amendment cruel and unusual punishment case, as opposed to cases that just decide does a jury verdict have to be unanimous or – But that's the whole point, is those other cruel and unusual punishment cases, like Roper and Graham, were categorical as opposed to this. I mean, they're different kinds of decisions. Well, when you receive a mandatory sentence, that's pretty categorical. I mean, you've got a categorical mandatory sentence, and I think changing that to a circumstance where now that sentence, rather than being mandatory, is going to be uncommon because you're required to consider substantive factors. And by the way, requiring now Virginia to come up with an alternative, Virginia now has to amend its criminal law for juveniles to come up with alternative sentences. And that would be a substantive change to their criminal laws in order to provide sentencing options other than life without parole for juveniles in these cases. I often wondered in this Miller case if they had not included that language about there being no categorical bar, whether it would have ever gotten a fifth vote. Well – They really knew what they were doing. You know, I mean, I understand how you can read it that way. I mean, obviously, that's a lot of speculation here as to what they were doing. I can turn it around on you, I think. I think if it weren't for that sentence, the courts that have found this not to be retroactive really have nothing else to hang their hat on. If you look at what's going on here, the substantive nature of making a sentence mandatory, the fact that factors have to be considered the way they were in Shiro. I think unless you just had that one sentence to hang your hat on, there's really no other argument. And our view is that the sentence does not compel that result. And, in fact, if you read it as saying process that includes substantive factors, not a procedural ruling, it actually turns around exactly the way. We would submit that the courts that have gone the other way have really given too much weight to that one sentence out of context. And that it would – actually, one more point, if I could. I'm sorry, I don't want to do that. But assuming that there was a fifth vote at the time to try to put language in that made it not retroactive, suppose that judge had that fifth vote, then what was that justice doing allowing Jackson's case to go back? And under their precedent that says when you allow relief in one collateral case, you have to allow it in others. This is all tea leaves. And it kind of gets back to my point about – and maybe it's an old-fashioned point. As an intermediate appellate judge, I look at that decision and say, wait a minute, that's not my decision. That's a Supreme Court's decision. If they want to rule it retroactive, that's great, and I totally respect it. But I also respect that it's their prerogative to do so. Well, that was actually the last point I wanted to address because I think with respect to successive petitions, I think the language does specifically say, and I think Judge Traxler's opinion and Thomas says this, that in that particular case, you do have to look and find that the Supreme Court either directly or by necessary implication did make the rule retroactive. That's for successive petitions. And Morgan was a successive petition, and Tyler B. Cain discussed successive petitions, and all the language that the Commonwealth has talked about with all due respect is not applicable to our case, which is not a successive petition. When it's not a successive petition, the courts have, for better or worse, and Judge Wilkinson, you're suggesting it might be for worse, but the courts have recognized that it does not have to be expressly stated by the Supreme Court. And that's the case we have here, and that is a determination that can be made here. Okay, thank you, Mr. Longstaff. Thank you very much. We'll come down and greet counsel and then go into our last case.
judges: William B. Traxler, Jr., J. Harvie Wilkinson III, Allyson K. Duncan